May it please the court, my name is Amanda Peter and I'm the attorney for Mr. Angel Gomez-Garcia, the appellant. Mr. Gomez-Garcia has appealed the decision of the trial court, which basically stated that the time that he received for a 1995 conviction involving drugs did not involve suspended time. This case boils down to what is suspended time and does it apply to Mr. Gomez-Garcia's case? And the question that I feel is more important... Not what is suspended time, but what is a suspended sentence? Exactly. And more importantly, the question is not who suspended the time, but was it suspended, as Your Honor has stated. The federal sentencing guidelines clearly state in section 2L1.2, application note 1A4, if all or any part of a sentence of imprisonment was probated, suspended, deferred, or stayed, sentence imposed refers only to the portion that was not probated, suspended, deferred, or stayed. And this section is in the section of the appellant's charge on lawfully entering or remaining in the United States. And I think it is the section that this Court needs to follow as far as the defendant's sentence. But what is the definition of a suspended sentence? I had a difficult time finding a definition in any of the circuit case law. And fortunately, the Pelley cited a case, United States v. Gadzik, which is a Seventh Circuit case. And that case defined what is a suspended sentence. And that court basically said, a definite sentence postponed so that defendant is not required to serve his time in prison unless he commits another crime or violates some court-imposed condition during a probationary period. And I feel that this definition is applicable to the appellant's case. I think it's right on point. When applying this definition to the appellant's case, it is clear that his sentence was suspended. In the excerpts of record, page 32, the judgment and sentence from a state court case clearly shows a recommendation by the court that the defendant serve his time, serve his 31 months through a work ethic camp in the Department of Corrections. The judgment and sentence further states on page 33, the court sentences the defendant to a one-year term of community placement to begin either upon completion of the term of confinement or at such time as the defendant may be transferred to community custody in lieu of earned early release. And finally, on page 35, the court notifies the appellant that any violation of the terms of the judgment could result in the defendant serving the remaining portion of the sentence in a more restrictive confinement status. Right there, that tells Mr. Gomez-Garcia, the appellant, that if he violates any condition of his community placement, he will be returned to prison for those 23 months. And per the definition set forth in United States v. Gadig, that is the suspended sentence. There's other case law that I have cited, one case in particular, United States v. Brooks. I feel that case is particularly on point. That was the sentence in which the gentleman served 83 days in a boot camp-type scenario, and the court found that he only deserved two points, not three points, even though he was actually sentenced to 10 years in the boot camp. What do you think makes – does it make any difference regarding who suspended? I don't think it makes any difference. Why? Because – What do you – what do you base that on? I base that – I base that on the case law, Your Honor. Which case? Which case stands for that proposition that it doesn't make any difference who suspended the sentence? I think one case in particular is United States v. Harris. This was a Sixth Cir – excuse me, Sixth Circuit case that came out of 2001, and the court ruled that it's very clear that it was not a suspended sentence for Mr. Harris because there was no probationary period. The defendant was simply paroled through the Department of Corrections, and the court ruled on page 588, parole did not have the legal effect of a suspended sentence. So in that case, the court wasn't looking to who suspended it, but was there a probationary period set forth after his release to ensure that that time would stay suspended, that there would be some period out there that if he violated any condition, he would be put back on. If the government or the appellee has proposed that Mr. Gomez-Garcia was simply paroled, his time was converted from 31 to 8, that is not the case. There was a system set up through the Washington State statute and through the judgment and sentence that were he to violate any condition, then he would be put back into prison. There were specific regulations set up. And I think that when the trial court made their order and said that because the Department of Corrections had the ultimate say on whether he was going to be accepted into the program, that that was mistaken. I think that Harris was a similar case in that the court ruled that, no, the Department of Corrections is the one that paroled the defendant, not the court. Well, yes, they paroled the defendant, but had they set up a probationary period, I think we'd be looking at a different answer. Now, as I understand this program, when the judge in Washington, the sentencing judge in Washington recommended that the defendant be allowed to participate in the work ethic program, that was basically it. It was a recommendation. It was a recommendation, yes. There was no requirement that the Bureau of Prisons or that the Department of Corrections actually had to place him in the program. That's correct. And I think that's the distinction that is important, but I don't think it's the ultimate deciding factor. The underlying – When you think of a suspended sentence, though, you usually think of the sentencing judge. Right. Saying, you know, imposition of sentence is suspended. The defendant is placed in community confinement or is placed on probation or whatever it might be. I agree with you, Your Honor. And all these terms and conditions. I agree with you, Your Honor. But the fact of the matter is that his suspended sentence was set up through his judgment sentence, which allows for the community placement. And it was set up through the very statute which allowed him to be put into the work ethic camp in the first place. I think that's what allowed for the suspended sentence to come about. And the fact of did the court set it up or did the Department of Corrections set it up makes no difference. The fact of the matter is that Mr. Gomez-Garcia received a suspended sentence. And I think that's the most important thing for the court to look at. Counsel, aren't the considerations perhaps somewhat different between the sentencing judge who takes into consideration the past criminal history, perhaps the family background of the defendant, his skills, his ability to work in the community, and suspends a sentence on imposition of conditions during the probationary period, and an administrative person such as a deputy sheriff who gets somebody and determines if he's a good prisoner to let him out early? So the consideration by the administrator may be on different factors, whether he's behaving well then, whether he's helping out, whether he's volunteering in jail and let him out early, whereas the judge takes the full panoply of personal factors into consideration in sentencing. Isn't that a difference? And I don't think it is, Your Honor, because the sentencing judge in, I believe it was in Franklin County or Benton County, made the recommendation. He made the recommendation knowing full well that this could happen, that the defendant most likely would be put into the work ethic camp and released early. And that's why in the judgment and sentence there were conditions set forth. So I believe the biggest question in determining whether there was a suspended sentence is, was there a probationary period? Could the time have been reimposed at a later date? And if your answer to that question is yes, then you have a suspended sentence. So, Your Honors, I would ask that you accept the argument of the appellant and rule that his 16-level enhancement should have been made a 12-level and that his three points should have been two. Thank you very much. All right. Thank you. Good morning to the court. Donald Cressy for the plaintiff at lead. Initially, does the court have any questions from reading my brief? Hearing none, the government respectfully disagrees honestly with the appellant in this matter. I think the primary issue is when is a sentence a sentence and what is a sentence? The important distinction to the government is that the judicial authority is the only one that has the authority to impose a sentence and, therefore, the only one who has the authority to suspend a sentence. In this particular case, the defendant, as counsel has stated to the court, received an initial sentence of 31 months. In fact, he was sentenced twice, the first time he got 31 months, the second time the judgment and sentence was amended to allow him to attend boot camp if he qualified, but he was still under a 31-month sentence. True, he served eight months of those, eight months of the time, and then was released to immigration authorities to be deported from the United States. The government does not take issue with any of those facts. What does concern the government is if the appellant's formula is to be applied, then, first, I think it leads to an inequitable situation. There can be two gentlemen, for example, who receive the same sentence, both, say, 24 months. One gentleman qualifies for work release or for boot camp, and so he serves a shorter sentence and is released from prison. In any subsequent proceedings, the gentleman who received the 24-month straight time will be treated inequitably when compared to the first gentleman. If the whole theory of the sentencing guidelines is that subsequent criminal actions will be treated harsher each time based upon prior criminal conduct, then we have to go back and look at what sentence was imposed, not what sentence was served. Sentencing judges often treat, you know, some defendant could get a suspended sentence, and somebody who has a similar sentence could get the full 31 months. I mean, that's what's... But again... Yes, Your Honor, but it is up, as the Court just said, it's up to the judge. And the judge in this is... Well, the judge here contemplated. I mean, he built into the sentence the possibility of very... He recommended. And if you get and if there's room in the program for you, when you complete it, you're going to be placed on and you're released under the program. You're a one-year community supervision or whatever the term is in Washington. As I pointed out, my... As I also pointed out in my brief, the Washington State Legislature has addressed this fact and, in fact, accords more credit, if you will, for boot camp than it does for straight time. There's a three-to-one ratio imposed by the government or my legislature. As I pointed out in my brief, if you take the eight months that this gentleman served at the three-to-one multiplier which the legislature has imposed, that equals 700 and some days of straight time. The legislature has recognized that boot camp is tougher, and for some reason, it doesn't apply the same way as a strict linear calendar does. One person can serve the straight time. The other person, if he goes to boot camp, gets some kind of super credit for going and doing this. But the measure of the underlying criminal conduct is the sentence which is imposed. If we're to punish recidivists, if recidivists are to be punished based upon their prior criminal conduct, we need an adequate measure of the severity of that crime. The only reliable indicator we have is the sentence which was imposed by the legislature, not some bureaucratic action taken afterward by a commutation of a sentence, as Gaddick, the Seventh Circuit case implies, where the unserved time was to be treated as a commutation, not a suspension by a judicial authority. It would therefore be the government's position in this case that we have to look to, we have to draw a bright line, if you will, so that sentencing courts in the future can reach an adequate determination of an individual's criminal history. And the only way to do that is to trust the wisdom and the judgment of the sentencing court and look to the sentence which was imposed. There are many reasons a person may get out of prison early. It's not unheard of for state institutions to release prisoners early because of financial considerations. We've all heard about it in the news where because of overcrowding and financial considerations, the doors are open and people with less than X number of months to go are released onto the street. What do we do in a case like that? Do we look to see how much time they actually served? Their sentence wasn't commuted. It wasn't suspended. The state simply throws up their hands and says, we don't have the money to lock these people up anymore. We're going to turn them loose and let them go. If those people ever reoffend, do we go back and now, well, start counting up the days they actually served? I'm sorry? If they're not released subject to terms and conditions that builds into this judgment, if they're just released because the prisons are overcrowded, isn't that different than this? No, Your Honor. If he's released, if he were released, once he was released from his, after completing the work program, as I understand this judgment, then he was placed for a year on what is it called, community placement? Supervised release, Your Honor. Right. But in Mexico. But if he violated, well, let's assume that he came back and he violated the terms and conditions during that one-year period, he could be remanded back into custody, taken back into custody in order to serve the balance of his term. Correct. Isn't that what a suspended sentence is like? Yes. But the appellant argues in this case that the measuring factor, the determining factor should be the amount of time actually served, the 8 months. My analogy is the same thing. If you have a person who's released early because of financial considerations That would be more than that. I mean, that wouldn't work, because I don't think that works. It has to be also the fact that they're released on these conditions, and if they violate the conditions, then they can be brought back into the system in order to serve the balance of their time. But the guidelines indicate that anybody that receives over a 13-month sentence receives a 16-level enhancement. So we're talking about a period of incarceration here, not necessarily a suspended sentence. Appellant argues that he did not serve the magic 13 months, which would qualify him for the 16-level enhancement. My analogy is the same thing. Suppose the sentencing judge here said, you know, I'm sentencing you to 18 months in prison. Okay. And I'm suspending, but I'm going to – because you're, you know, you've got all these – got this potential, you're great, it's an unfortunate thing here. I'm going to suspend 10 months. Doesn't qualify. The guidelines say 13 months incarceration. The 16 points should not be added. Counsel, are you saying that the judge cannot delegate the period of time of suspension of a sentence to anyone? He must impose it himself? No, I'm not saying that, Your Honor. But apparently the legislature – I have considered all the reasons why a sentence should be suspended, and I am now delegating that task to the deputy sheriff at the work camp, the work ethic camp, and allowing him to suspend the sentence whenever he feels like it. I'm not saying that couldn't occur, Your Honor. I'm saying it didn't occur. You say that didn't occur, but isn't that the substance of what happened? He considered the suspension and delegated it to the deputy sheriff to execute it. Isn't that one way of looking at it? That's certainly one way of looking at it. But do we have any Ninth Circuit court cases that deal exactly with this situation? Or must we rely on Harris and other circuit court cases? I was unable to find any, Your Honor. This will be, I think, a matter of first impression for this Court and leave it to the Court's own discretion. I asked the Court to look to the Seventh Circuit for guidance. Of course, this Court is free to do whatever it wants. But the Seventh Circuit examined the case as near as I can find that is almost a mirror image of what's going on here. Which case is that? I believe it's pronounced Gadget, Your Honor. It's cited in my – Yeah, only a court, not an executive agency, could suspend a sentence. It's Gadget. Right. It's on page 9 of my brief, Your Honor. It's a Seventh Circuit case at 292 Fed 3rd 555. Okay. Does the Court have any further questions? Thank you. I guess not. Thank you. Thank you, Your Honor. Thank you very much. Ms. Bell? I don't know if I had mentioned this when I was arguing earlier. The United States v. Gadget, the case that was cited by the appellee, in that – You keep your voice up. I'm sorry. In that case, Your Honor, the Court ruled that Mr. Gadget's sentence was not suspended because the Illinois statute did not provide for a probationary period after the defendant was released. And I think that's critical here, and it applies directly to Mr. Gomez-Garcia's situation, that had Mr. Gadget's case had a probationary period set up after he was released. Well, there's just something troubling about the notion that the sentencing judge, although he's made a recommendation to the prison, that if in the judgment of the official, this fellow qualifies, the defendant qualifies for this work ethic program, that that decision is placed within the control of the prison authorities as opposed to the judge. That's correct, Your Honor. And I have about six seconds left, so I will just tell you that the only reason that I believe it was suspended is because the situation was set up through the judgment and sentence and through the statute. And because there was a probationary period allowed for Mr. Gomez-Garcia, his sentence was suspended. So your position then basically is the unique system here in Washington of this work ethic program. No, I don't think it's unique just to Washington, Your Honor. I think the other cases that I cited basically rely on the fact that if there is a system set up, whether it be a boot camp in Illinois, a pardon in the state of New York. What I meant by that was the system in Washington, if they do complete the program and they then are released on this community supervision. Community placement, correct. And have terms and conditions. Right. If they violate it, they can be sentenced for the balance of the terms. Correct. I think that's unique here, Your Honor, but I think it's exactly suspended sentence. Thank you. All right. Thank you. We thank both counsel. This case is submitted for decision. Next case on the argument calendar is United States v. Juvenile, Philip L.
judges: Tashima, Paez, Bea